THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br>   v.<br><br>MICROSOFT CORPORATION, a Washington Corporation; QUALTRICS INTERNATIONAL INC., a Delaware Corporation; and QUALTRICS LLC, a Delaware Limited Liability Company,<br><br>   Defendants. | CASE NO.: 2:23-cv-0718-JCC<br><br>**DEFENDANTS QUALTRICS INTERNATIONAL INC. AND QUALTRICS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>NOTE ON MOTION CALENDAR:<br>September 11, 2023 |

QUALTRICS' REPLY ISO MTD
2:23-cv-0718-JCC

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................................................................1

ARGUMENT .....................................................................................................................................1

I.     Plaintiff Has No Standing ..................................................................................................1

       A.     Plaintiff Has Suffered No Injury ............................................................................. 1

       B.     Plaintiff Alleges No Cognizable Loss ..................................................................... 4

II.     Plaintiff Failed to State a Claim .........................................................................................5

       A.     "Throughout" Does Not Cure Plaintiff's Rule 8 Defects ........................................ 5

       B.     Plaintiff's Claims Must Be Dismissed Because She Consented to Qualtrics' Collection of Her Data ........................................................................................... 6

       C.     Plaintiff Fails to State a Claim Under CIPA §§ 631 or 632 .................................... 7

       D.     Plaintiff Fails to State an Invasion of Privacy or Intrusion Upon Seclusion Claim ....................................................................................................... 8

       E.     Plaintiff Fails to State a CFAA Claim ................................................................... 10

       F.     Plaintiff Fails to State a UCL Claim ...................................................................... 11

       G.     Plaintiff Fails to State a Claim for Statutory Larceny, Conversion, or Unjust Enrichment ............................................................................................................ 11

CONCLUSION ................................................................................................................................12

QUALTRICS' REPLY ISO MTD
2:23-cv-0718-JCC
- i -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) .................................................................................. 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................. 2

*Brown v. Google*,
    2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ........................................................................... 3

*Cholla Ready Mix, Inc. v. Civish*,
    382 F.3d 969 (9th Cir. 2004) .................................................................................................... 2

*Colo. Republican Comm. v. Doe*,
    2016 WL 3922156 (D. Colo. July 21, 2016) .......................................................................... 11

*Deering v. CenturyTel, Inc.*,
    2011 WL 1842859 (D. Mont. May 16, 2011) .......................................................................... 9

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) .................................................................................... 11

*Garcia v. Build.com, Inc.*,
    2023 WL 4535531 (S.D. Cal. July 13, 2023) ........................................................................... 7

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................................................... 6

*Gardiner v. Walmart, Inc.*,
    2021 WL 4992539 (N.D. Cal. July 28, 2021) ........................................................................... 4

*GateGuard, Inc. v. Amazon.com Inc.*,
    2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023) ......................................................................... 10

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................................... 7

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................................................. 11

*In re Facebook Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .................................................................................................... 3

*In re Meta Pixel Healthcare Litig.*,
    2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ........................................................................ 6

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC

- ii -

WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

**Page(s)**

**CASES**

*Javier v. Assurance IQ LLC*,
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) .................................................................... 7, 8

*Katz-Lacabe v. Oracle Am., Inc.*,
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ..................................................................... 5

*Licea v. Old Navy, LLC*,
    2023 WL 3012527 (C.D. Cal. Apr. 19, 2023) ................................................................... 7

*Low v. Linkedin Corp.*,
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .................................................................. 3

*Maddalena v. Snohomish Cnty.*,
    2023 WL 4893506 (W.D. Wash. Aug. 1, 2023) ............................................................... 2

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ............................................................................ 9

*Opperman v. Path, Inc.*,
    205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................................... 9

*People v. Brock*,
    143 Cal. App. 4th 1266, 49 Cal. Rptr. 3d 879 (2006) .................................................... 12

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1988) ................................................................................... 5, 10

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) .................................................................. 6

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ......................................................................................... 6

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) ................................................................................................... 10

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............................................................... 9

*Yockey v. Salesforce, Inc.*,
    2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ................................................................. 7

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................. 5

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 2

QUALTRICS' REPLY ISO MTD      - iii -      WILSON SONSINI GOODRICH & ROSATI, P.C.
2:23-CV-0718-JCC      701 Fifth Avenue, Suite 5100
     Seattle, WA 98104-7036
     Tel: (206) 883-2500

# INTRODUCTION

Qualtrics provides a software tool to its customers, like Kaiser, that enables those customers to collect certain data on their websites to improve those sites. Qualtrics' Motion to Dismiss (the "Motion" or "Mot."), Dkt. 37 at 2; Compl. ¶ 9. As explained in the Motion, Plaintiff's claims against Qualtrics fail because (1) this data does not identify a Kaiser Website[1] user by name or otherwise personally identify a user, Mot. at 6-7, and (2) Qualtrics does nothing with this data for itself, *id*. at 3. Plaintiff does not allege (nor could she) that Qualtrics used her data for its own purposes (such as for targeted advertising or selling the data to third parties). *Id.*

Nothing in Plaintiff's Opposition to Qualtrics' Motion to Dismiss (the "Opposition" or "Opp.") contradicts these key facts. Dkt. 54. The cases she relies on are inapt—they involve companies that identify users by name, couple that information with their internet browsing activity across multiple websites, and then use that combination to target those users with third-party advertisements for profit. But Qualtrics is a software-as-a-service (SaaS) provider, not a social media company or internet advertising company, and it does not do any of those things. As she did in her Complaint, Plaintiff's Opposition tries to obscure these fatal flaws by incorrectly using the collective term "Defendants" when she is actually referring only to defendant Microsoft, which (unlike Qualtrics) allegedly does collect users' names and browsing history for targeted advertising. But Qualtrics has no liability for Microsoft's alleged conduct—the two entities have absolutely no connection. Because no amended complaint could change these undisputed facts, the Court should dismiss the claims against Qualtrics with prejudice.

# ARGUMENT

## I. Plaintiff Has No Standing

### A. Plaintiff Has Suffered No Injury

Nothing said in Plaintiff's Opposition changes the fact that Kaiser uses the Qualtrics tool to collect only anonymous data that cannot be tied to a user's name. While Plaintiff argues that

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the Motion.

| | | |
|---|---|---|
| QUALTRICS' REPLY ISO MTD<br>2:23-CV-0718-JCC | - 1 - | WILSON SONSINI GOODRICH & ROSATI, P.C.<br>701 Fifth Avenue, Suite 5100<br>Seattle, WA 98104-7036<br>Tel: (206) 883-2500 |

"[a]t the pleading stage, Plaintiff's allegations must be taken as true and construed in the light most favorable to her," Opp. at 5, this is only part of the legal standard. The Court can only take "well-pleaded" factual allegations as true and then must decide whether those allegations "plausibly" give rise to a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court will not accept unfounded inferential leaps or legal conclusions. *See Maddalena v. Snohomish Cnty.*, 2023 WL 4893506, at *1 (W.D. Wash. Aug. 1, 2023) ("Conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion." (citing *Iqbal*, 556 U.S. at 677-78)); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). No matter how the Court construes the Complaint, Plaintiff *never* alleges that Qualtrics collects her name or that the information Plaintiff claims Qualtrics collects could somehow be aggregated to enable Qualtrics to identify her by name. Plaintiff alleges that *Microsoft* collects her name and other information in a manner that identifies Plaintiff and then associates the information with Kaiser Member data:

- "Each of these [Microsoft] identifiers is unique to a specific user, and [one of them] includes a user's real name." Microsoft Opp. at 2; Compl. ¶¶ 35-36.
- "Microsoft obtained Plaintiff's information *in a manner that can identify Plaintiff*." Microsoft Opp. at 1 (emphasis added).
- Plaintiff repeatedly alleges that Microsoft uses the data it collects "to *identify the Kaiser Member* associated with the data." Compl. ¶¶ 30, 39, 42, 45, 47, 50, 53, 56 (emphasis added).

Conversely, Plaintiff does *not* allege that *Qualtrics* collects her name or other information in a manner that identifies Plaintiff or associates the information with Kaiser Member data. To obfuscate this defect, Plaintiff argues the data was not anonymous because Qualtrics assigns randomized alphanumeric strings that enable Qualtrics to link this information "to a specific user and identify the user." Opp. at 5; *see also* Compl. ¶¶ 68, 71, 74, 76, 79, 82, 85. But the ability to identify a specific *but anonymous* user is not enough to assert an injury for standing, as shown in Plaintiff's own cited cases.

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 2 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

In *Facebook Tracking*, Facebook collected and correlated users' browsing history across the internet with their Facebook user profiles (which included their names and other personal information) and then sold this data to advertisers who could in turn target those users with personalized advertising for profit. *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 596 (9th Cir. 2020). Similarly, in *Brown v. Google*, the district court found that Google collected users' internet activity while they browsed in private mode and matched it with their user profiles (which included their names and other personal information) to target them with personalized ads. __ F. Supp. 3d __, 2023 WL 5029899, at *6 (N.D. Cal. Aug. 7, 2023).

In both cases, the companies collected users' browsing history across different websites, coupled it with their *names* and personal information, and profited from this combination through targeted advertising—a primary component of their revenue models:



Unlike in *Facebook Tracking* and *Brown*, Plaintiff alleges that Qualtrics collected user activity from a single website and paired it with an anonymous user for Kaiser's own use. Plaintiff never alleges (nor could she) that Qualtrics tied this activity to users' names or other identifying information and used it for any other purpose. *See Low v. Linkedin Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011) (no standing without allegations about "*how* third party advertisers would be able to infer [plaintiff's] personal identity from [defendant's] anonymous user ID combined with his browsing history."). Taking Plaintiff's allegations as true, *at most* Qualtrics would have data that, for instance, hypothetical user DKE283AKD1 looked at information on the Kaiser Website. The Opposition does nothing to explain how this harms Plaintiff when Qualtrics has no way of knowing whether she is user DKE283AKD1, or how this information could be used to target advertising at her.[2] She has no standing to assert her claims. *See* Mot. at 6-7.

---

[2] For instance, Plaintiff does not allege (nor could she) that Qualtrics connects its randomized user IDs with social media pages where she could be targeted with advertising.

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 3 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

### B. Plaintiff Alleges No Cognizable Loss

Qualtrics' Motion explained that Plaintiff additionally lacked standing to assert CFAA, UCL, statutory larceny, unjust enrichment, or conversion because she failed to plead any economic damages or loss. Mot. at 8-9. Neither of Plaintiff's theories in response overcome this failure.

Plaintiff claims she was damaged because (1) Qualtrics took and used her "private data," and (2) her data's value diminished. Plaintiff's first theory fails because it relies on the data being associated with her identity—as the sole case she cites in support of this theory (*Facebook Tracking*) involved the combination of user's names with their browsing histories to engage in targeted advertising of those users. Opp. at 7-8; *see also* § I.A. Plaintiff also argues that "Qualtrics has used, profited, or otherwise benefitted from her … data." Opp. at 8. But the only Complaint allegations she cites discuss the market for private data generally, or her improper group allegations that rely on conduct alleged against Microsoft. Plaintiff's specific allegations against Qualtrics are silent on Qualtrics' using or profiting from her data, and for good reason—Qualtrics does not sell user data or use it for targeted advertising.

Plaintiff's second theory relies on her allegation that there exists a "market for her data" and that her data's value diminished because Qualtrics had access to it. *Id*. This diminution in value theory fails for at least four reasons. First, the Complaint only discusses marketplaces for "private" data—Plaintiff never alleges there is a marketplace for her Kaiser website visits. Compl. ¶¶ 88-102. Second, even if such a market did exist, Plaintiff never pleads that Qualtrics affected that market by selling her data. This is a far cry from *Brown*, where Google profited from users' browsing history across the Internet (by using it to sell targeted advertising) and had itself assigned a value to that data, paying users in a pilot program $3.00 a month for their browsing data. Third, Plaintiff never disputes (and thus concedes) that a plaintiff must establish "an impairment of the ability to participate" in a market for the data. *Gardiner v. Walmart*, Inc., 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021). But she never alleges that she even attempted to sell her data, let alone that her ability to do so was impaired by Qualtrics' conduct. Fourth, even if this case involved

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 4 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

"personal" information (it does not), the "weight of the authority" in California holds that "the 'mere misappropriation of personal information' does not establish compensable damages." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (citation omitted).

Plaintiff asks for leave to amend her Complaint to allege that Qualtrics sells Kaiser Website user data (including "raw user data") *to Kaiser*, and thus profits from the sale of Plaintiff's data to Kaiser. Opp. at 9 n.11. This is nonsensical and conflicts with Plaintiff's own allegations. Kaiser hired Qualtrics as a vendor to provide a software tool on *Kaiser's website*, which website *Kaiser* owns, not Qualtrics. Plaintiff never alleges, nor could she, that the data she claims at issue here—*e.g.*, URLs and search terms entered on Kaiser's site—are not already available to Kaiser as the owner of the platform.

## II.    Plaintiff Failed to State a Claim

### A.    "Throughout" Does Not Cure Plaintiff's Rule 8 Defects

Plaintiff argues that because she allegedly used the Kaiser Website "throughout" the ten years that she has been a Kaiser member, no more is needed to comport with Rule 8. She cites no cases for this proposition. Plaintiff does not specify if she used the website yearly, monthly, or once every five years, or when she last used it. This renders Qualtrics unable to assert statute of limitations[3] or other defenses. And Plaintiff asserts a tolling argument in her Complaint, suggesting Qualtrics has a non-frivolous statute of limitations defense.

In opposition, Plaintiff claims for the first time that she used the website "regularly." Because this was not alleged in the Complaint, it must be disregarded. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1988).

Finally, Plaintiff argues that Qualtrics "has whatever information it needs beyond the facts alleged in the Complaint concerning when it intercepted and collected the at-issue data." Opp. at

---

3 Plaintiff claims (without legal support) there is no problem because "[t]o the extent the defense is viable and Qualtrics raises it, they will have the opportunity to prove it at trial." Opp. at 11. But Rule 8 (which governs *pleading* standards) is meant to be invoked at the beginning of a case to avoid wasting the parties' and the Court's resources.

11. This is not a plausible allegation. As Plaintiff's Complaint demonstrates, Qualtrics does not have access to Kaiser Website users' real names and thus would not be able to determine when Plaintiff used the Website. *See* Compl. ¶¶ 60-65.

> **B.      Plaintiff's Claims Must Be Dismissed Because She Consented to Qualtrics' Collection of Her Data**

As explained in Qualtrics' Motion, Plaintiff consented to Kaiser's Privacy Statement when she logged in to Kaiser's Website, which disclosed that data is shared with third-party partners like Qualtrics. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *2 (N.D. Cal. July 28, 2021) (dismissing complaint based on similar privacy policy). Plaintiff attempts to run away from this disclosure by stating (without argument) that "Qualtrics fails to demonstrate that Plaintiff had notice of the Privacy Statement." Opp. at 13. However, Plaintiff (not Qualtrics) bore the burden of pleading that she had no notice of the Privacy Statement, which she failed to do. *See Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015). Regardless, the terms of a website's privacy statement are binding "even if the user did not actually review the agreement, provided that ... the website put a 'reasonably prudent user on notice of the terms.'" *Id.* Here, a reasonable user would have been on notice because the Privacy Statement was linked conspicuously on the Kaiser log-in page, in large font and directly below the "Sign in" button. *See* Dkt. 39, Ex 3.

Plaintiff next argues that Kaiser's Privacy Statement is inadequate because it did not identify Qualtrics by name or clarify that "personal information" included health information. It is sufficient, however, that Kaiser disclosed that it would share data with third parties. *See Silver*, 2021 WL 3191752, at *3. Likewise, Kaiser's Privacy Statement need not specify that it shares health data. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (privacy policy did not need to specify that health-related data would be collected). Plaintiff's one-cited case to support her position concerns allegations that Meta collected data from Facebook users' interactions with their medical providers' websites. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *9-10 (N.D. Cal. Dec. 22, 2022). In defense, Meta argued that plaintiffs consented to Meta's

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 6 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

privacy policy—not the medical providers' policies. The court was "skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information." *Id.* By contrast, the Privacy Statement Plaintiff agreed to was between her and Kaiser—Plaintiff's healthcare provider—so a reasonable user would understand that it pertained to health-related data.

Finally, Plaintiff argues that her consent cannot bar all claims because the Complaint alleges that Qualtrics collects some data from users who are not logged in to Kaiser's Website (and thus allegedly did not consent by logging in). But this Plaintiff cannot make those claims because, as she alleges, she logged into her Kaiser Website account—and thus consented to the Privacy Statement. Compl. ¶ 7.

### C.    Plaintiff Fails to State a Claim Under CIPA §§ 631 or 632

Qualtrics' Motion explains that Plaintiff's § 631 claim fails because Qualtrics is nothing more than an extension of Kaiser, citing several cases that have followed this reasoning. Mot. at 13; *see also Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023); *Licea v. Old Navy, LLC*, 2023 WL 3012527, at *3 (C.D. Cal. Apr. 19, 2023). Plaintiff largely ignores these cases, which hold that a software provider is a "tool" or "extension" if the provider only uses the data for the sole benefit of the parties to the communication. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Plaintiff cites a dissenting case, *Javier v. Assurance IQ LLC*, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023), which represents the minority view. *Javier* rejected the "actual use" inquiry and instead held that if the plaintiff alleged that defendant had the *capability* to use the collected information for its own purposes, it was not just a "tape recorder" and could not rely on the tool exception. *Id.* at *6. This case does not change the result here because Plaintiff does not (and could not) allege that Qualtrics has the capability to use Kaiser's data for its own purpose—or what that purpose would be. *See Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023) (plaintiff failed under the *Javier* standard to demonstrate that another Kaiser SaaS vendor had the *capability* to use Kaiser's data—in that case, instant messages—for

its own purposes where the data was sent to the vendor's servers and analyzed by the vendor's software). Instead, Plaintiff focuses her argument on unspecified "technology companies" that have "transformed their models from fee-for-services-provided to monetizing user data." Opp. at 14-15. This has nothing to do with Qualtrics, which sells services, not user data. *See* Compl. ¶ 9.

Qualtrics' Motion explains that Plaintiff's § 632 claim fails because Qualtrics did not "use" the device, nor did it intend to record confidential communications. Mot. 14-15. Plaintiff never disputes that *Kaiser* controls its website or that *Kaiser* incorporated Qualtrics' software. Nor does she dispute that Qualtrics' only role in storing the data is for Kaiser's sole use and benefit. She cites no precedent in support of her argument that Qualtrics "uses" the recording device because Kaiser sends certain data to Qualtrics' servers. Plaintiff argues that Qualtrics must have intended to collect her confidential communications, as required for a Section 632 violation, because the communications were between Plaintiff and her healthcare provider. But Plaintiff does not make any showing that Qualtrics intended to collect communications without patient consent or to collect confidential communications. Plaintiff's proposed standard would eliminate the intent requirement for any Section 632 claim that arises in the healthcare context, but CIPA does not include any such exception. And in any event, Plaintiff cites no cases where anonymous communications were found to be "confidential" under § 632.

### D.    Plaintiff Fails to State an Invasion of Privacy or Intrusion Upon Seclusion Claim

Qualtrics' Motion demonstrates that the Complaint fails to state constitutional or common law privacy claims because she does not adequately allege (1) a highly offensive intrusion into (2) a reasonable expectation of privacy or (3) a legally protected privacy interest.[4] Mot. at 15-18. Plaintiff's Opposition does not change this conclusion.

*Not Highly Offensive.* With respect to this prong, Plaintiff relies on the inapposite line of cases following *Facebook Tracking*, which concern collection of a user's internet browsing

---

4   Additionally, Plaintiff's intrusion upon seclusion claim should be dismissed because she fails to plead intent plausibly. *See* § II.C.

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 8 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

activity across multiple websites to build a marketing profile of a specific person's interests. *See* § I.A. Here, a single website collected data about how visitors interact with it to improve the operation of that one website—something any internet user would assume to be the case. Plaintiff also asserts that the *purpose and use* of the data collection is irrelevant to whether the collection is highly offensive, but the single case Plaintiff cites says no such thing. Opp. at 18 (quoting *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1078 (N.D. Cal. 2016)). *Opperman* stands only for the proposition that California's improper use requirement should not be "mechanically applied." *Id.* Even if the Court credits this outlier opinion, Plaintiff's Opposition ignores, and thus concedes, Qualtrics' larger point that Qualtrics did not use Plaintiff's data for its own purposes. *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1140-41 (E.D. Cal. 2021) (dismissing privacy claims where plaintiffs failed to allege that defendants "used his information for any purpose at all").

*No Reasonable Expectation of Privacy.* As explained in § II.B, the Opposition cannot change the fact that Plaintiff consented to Kaiser's Privacy Statement, thus defeating any reasonable expectation of privacy. *See Deering v. CenturyTel, Inc.*, 2011 WL 1842859, at *2, 7 (D. Mont. May 16, 2011) (there "is no reasonable expectation of privacy when a plaintiff has been notified that his Internet activity may be forwarded to a third party").

*No Legally Protected Privacy Interest.* The Opposition fails to address, and thus concedes, that Plaintiff cannot assert a privacy interest against Qualtrics because Qualtrics is merely a tool for Kaiser to collect data on its own website (which Kaiser has the right to do). *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *4-5 (N.D. Cal. Dec. 22, 2022). And, as shown in § I.A, Plaintiff fails in her attempts to re-write the Complaint to support her arguments in the Opposition that the data collected was not anonymized. Plaintiff attempts to distinguish cases finding no legally protected privacy interest in data collected from a single website by arguing that her allegations concern Qualtrics', not Kaiser's, collection of data. Opp. at 17. That is a distinction

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 9 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

without a difference. Plaintiff fails to cite any cases where the collection of data from a single website implicated an actionable privacy claim.[5]

### E. Plaintiff Fails to State a CFAA Claim

Qualtrics' Motion explains that Plaintiff fails to state a CFAA claim because she cannot plead "loss" under the Supreme Court's holding in *Van Buren v. United States*, which limited CFAA "loss" to "costs caused by harm to computer data, programs, systems, or information services." 141 S. Ct. 1648, 1659-60 (2021); Mot. at 18-21. Plaintiff's Opposition ignores *Van Buren*, and instead cites the definition for "damages," which is not applicable to the CFAA sections that Plaintiff has pleaded. Opp. at 19. The only loss Plaintiff alleges in the Complaint—diminution in value of the putative class's data (Compl. ¶ 182)—does not come within the ambit of "loss" as recognized by *Van Buren* and its progeny.

Plaintiff's Opposition contains a new theory of loss found nowhere in the Complaint: that the putative class can reach the loss threshold because Plaintiff hired a "technical expert" to investigate Qualtrics' collection of her data. This theory fails because (1) this loss is still not a loss the statute contemplates, *Van Buren*, 141 S. Ct. at 1659-60, and (2) it was not alleged in the Complaint, *Schneider*, 151 F.3d at 1197 n.1.

Plaintiff's other CFAA arguments cannot salvage this claim. Plaintiff consented to Qualtrics' access, *see* § II.B, and she does not explain how Qualtrics exceeded such access. And Plaintiff's "threat to public health or safety" argument fails because Plaintiff relies on her general allegations about black markets for personal data and general legal protections for health information that have no bearing on Plaintiff's claimed harm. Plaintiff must make "specific factual allegations" in support of the "threat to public health or safety" theory to survive a motion to dismiss. *See GateGuard, Inc. v. Amazon.com Inc.*, 2023 WL 2051739, at *4 n.3 (S.D.N.Y. Feb.

---

[5] Plaintiff's last-ditch argument that the Complaint alleges that Qualtrics used its software on other websites is a red-herring—Plaintiff's privacy claims arise only from the use of Qualtrics software on Kaiser's website. Plaintiff does not even allege that she visited any other website that uses Qualtrics' software.

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 10 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

16, 2023). And she comes nowhere near the type of harms that courts hold might fall within this category, such as "disabl[ing] computers or delet[ing] data essential to providing medical treatment, public utilities, or emergency response services." *Colo. Republican Comm. v. Doe*, 2016 WL 3922156, at *2 (D. Colo. July 21, 2016).

### F.   Plaintiff Fails to State a UCL Claim

Qualtrics' Motion explains that Plaintiff's UCL claim fails because she cannot demonstrate economic injury as required, and she cannot meet the "unlawful" or "unfair prongs." Mot. at 21-22.

Plaintiff's Opposition does not dispute the cases Qualtrics cites holding that "the unauthorized release of 'personal information' does not constitute a loss of money or property for purposes of establishing standing under the UCL." *See, e.g.*, *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 811 (N.D. Cal. 2011). She summarily claims she has "alleged multiple cognizable economic injuries," Opp. at 21, but, as discussed above, § I.B, she has not. Plaintiff does not have UCL standing.

And like her other claims, Plaintiff's UCL claim hinges on the incorrect allegation that Qualtrics collects personally identifiable information because the claim assumes that Plaintiff's privacy was invaded. Opp. at 20-21. Because her other claims fail, this claim must also fail under the unlawful prong. Plaintiff never disputes the caselaw cited in Qualtrics' Motion that when the "unlawful" prong fails, and the "unfair" prong "overlaps entirely with the conduct alleged in the … unlawful prong[]," the "unfair" prong does "not survive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022), *appeal docketed*, No. 22-17024 (9th Cir. Dec. 30, 2022). For these reasons, the UCL claim must be dismissed.

### G.   Plaintiff Fails to State a Claim for Statutory Larceny, Conversion, or Unjust Enrichment

*Statutory Larceny.* Plaintiff's Opposition argues that "Qualtrics cites no authority for the assertion that anonymized data would obviate liability" for a statutory larceny claim. Opp. at 21.

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC
- 11 -
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500

Not so. Qualtrics cited numerous cases finding no standing for *any* claims that concerned anonymized data. Mot. at 7. Moreover, "[t]heft by larceny ... is not committed when the property is taken with the owner's consent." *People v. Brock*, 143 Cal. App. 4th 1266, 1274, 49 Cal. Rptr. 3d 879 (2006). Because Plaintiff consented to the collection and sharing of her data, she cannot state a claim.

*Conversion.* Plaintiff does not address, and thus concedes, Qualtrics' argument that Plaintiff cannot state a claim for conversion because she has not demonstrated a legitimate claim to exclusive possession or control of her data. Mot. at 23-24.

*Unjust Enrichment.* Plaintiff misrepresents the law by arguing that California courts recognize unjust enrichment as a stand-alone claim. *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070 (N.D. Cal. 2021) (distinguishing Plaintiff's cited cases); Opp. at 22-23. Regardless, Plaintiff's Opposition concedes that the basis for her unjust enrichment claim is that Qualtrics benefited from Plaintiff's data through "targeted advertising and other uses of such data." Opp. at 23. As explained in Qualtrics' Motion, this generalized group allegation must be rejected— as Plaintiff *cannot* plausibly allege that Qualtrics engaged in such conduct. Mot. at 6.

## CONCLUSION

For the foregoing reasons, and those stated in the Motion to Dismiss, the Complaint should be dismissed with prejudice.

Dated: September 11, 2023

I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.

Respectfully submitted,

/s/ Gregory L. Watts
Gregory L. Watts, WSBA #43995
Tyre L. Tindall, WSBA #56357
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Email: gwatts@wsgr.com
Email: ttindall@wsgr.com

Anthony J Weibell, *admitted pro hac vice*
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
650 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 493-9300
Email: aweibell@wsgr.com

Sophia M. Mancall-Bitel, *admitted pro hac vice*
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Email: smancallbitel@wsgr.com

*Attorneys for Defendants Qualtrics International Inc. and Qualtrics, LLC*

QUALTRICS' REPLY ISO MTD
2:23-CV-0718-JCC

- 13 -

**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Tel: (206) 883-2500