THE HONORABLE JOHN C. COUGHENOUR

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br>　vs.<br><br>MICROSOFT CORPORATION, a Washington Corporation; QUALTRICS INTERNATIONAL INC., a Delaware Corporation; and QUALTRICS LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Defendants. | Case No.: 2:23-cv-0718-JCC<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter.

The parties began with the District's Model ESI Agreement and have identified departures from the model in a redlined copy, attached as Exhibit 1.

**A.    General Principles**

1.    An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2. As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.   ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The custodians most likely to have non-duplicative discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, and the type of potentially relevant information that may be within that custodian's files or data sources. Each party will, in good faith, identify appropriate custodians, and, once the producing party has produced documents, the parties agree to meet and confer if the non-producing party believes additional custodians are needed following the review of the production documents.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (e.g., shared drives, servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Foreign data privacy laws. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the

European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**C.    ESI Discovery Procedures**

    1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

    2.    <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall exercise reasonable efforts in revising the appropriateness of the search methodology.

        a.    Prior to running searches:

            i.    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query. In the event that a receiving party believes that the proposed search terms or other above-described limitations are insufficient, the parties shall meet and confer to attempt to reach agreement on the producing party's search terms and/or other methodology.

            ii.    The requesting party is entitled to, within 14 days of the producing party's disclosure of search terms as described Section 2(a)(i), above, add no more than 10 search terms or queries to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

            iii.    The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple

words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

3. Format.

a. Subject to Section 3(b), ESI will be produced to the requesting party with searchable text, in the following format: (a) single-page TIFFs with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files; (b) in the case of documents available only in hard copy format, as scanned and searchable PDF files; or (c) in the documents' native format.

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and drawing files, will be produced in native format. Further, upon the reasonable request that includes identifying the Bates numbers for specific documents and the basis for the request, the producing party shall produce files in their native format.

c. Each document image file shall be named with a unique production number (Bates Number). Documents produced in native format will be assigned a Bates Number and produced with a corresponding load file. Original file names should be preserved and included in the load file metadata. File names should not be more than thirty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

4.      De-duplication.

a.      A producing Party shall use reasonable efforts to deduplicate globally (i.e., across document custodians) and horizontally (i.e., within a custodial collection) at the "family" level (i.e., if there are identical child documents that have unique parents, they are not duplicates; an attachment to a document is not a duplicate of the same document maintained as a standalone document).

b.      To the extent practicable, all custodians who were in possession of the deduplicated document shall be identified in the "All Custodian" metadata field of the copy of the single record that is produced. Multiple custodians in the "All Custodians" field shall be separated by semicolons.  If processing and production is done on a rolling basis, an updated "All Custodians" field with additional values may be provided in an overlay.

5.      Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.

6.      Metadata fields. If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian; all custodians; author; from; to; cc; bcc; title/subject; email subject (to the extent email subject is not duplicative of title/subject); file name; file size; file extension; date and time created, date and time sent, date and time modified; last saved by; and MD5 hash value, BEGBates (beginning bates numbers), ENDBates (ending bates numbers), BEGAttach (first production Bates number of first document in a family), EndAttach (last production Bates number of first document in a family). The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

7.      Hard-Copy Documents. The parties elect to produce hard-copy documents in an electronic format. Hard-copy documents should be scanned as single page, Group IV, 300 DPI

TIFF images with an .opt image cross-reference file and a delimited database load file (i.e., dat) that indicates document breaks and sets forth the Custodian or custodian/location associated with each produced document, and the beginning Bates number, ending Bates number, pages, and volume. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file shall be named with a unique Bates Number (e.g. Unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will comply with their obligations to supplement under Fed. R. Civ. P. 26(e) and will supplement their responses with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

    a.   Deleted, slack, fragmented, or other data only accessible by forensics, except to the extent the data changed formats (e.g. was deleted or fragmented) after the producing party became aware of this litigation.

    b.   Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

    c.   Online access data such as temporary internet files, history, cache, cookies, and the like.

    d.   Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

    e.   Backup data that are duplicative of data that are more accessible elsewhere.

    f.   Data remaining from systems no longer in use that is unintelligible on the systems in use.

    g.   Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

1.    The parties agree to abide by Fed. R. Civ. P. 26(b)(5) with respect to documents withheld from production on the basis of a privilege or other protection. Any privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced no later than 45 days after production, unless an earlier deadline is agreed to by the parties.

2.    Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3. Parties are not required to include in privilege logs any privileged or work-product information generated after the filing of the complaint, including any communications with outside counsel dated after the filing of the complaint, to the extent the communications contained privileged information or information protected by the work-product doctrine.

4. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection.

6. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. At the same time, a party shall not be obligated to conduct a document-by-document review of documents prior to its production; provided however, that a party shall utilize keyword search terms (e.g., the names of counsel and law firms for the producing party, although the failure to identify a particular counsel or law firm as a keyword term shall not be construed as waiver), analytical software tools and/or other reasonable means to locate and exclude potentially privileged materials prior to the production. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Should a party choose not to conduct a document-by-document review, the party shall disclose this at the time of production by designating the production volume or bates ranges and by affixing an appropriate legend to indicate the documents are being produced without review and subject to a Rule 502(d) Clawback ("Subject to Potential Clawback Material"). Such

documents produced without review shall be deemed Highly Confidential – Attorneys' Eyes Only. Consistent with the Clawback provisions herein, disclosure of privileged information without review in this Litigation shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any attorney-client, work product or other applicable privilege or immunity in this case or in any other federal or state proceeding. Any privileged material produced pursuant to this paragraph shall be deemed to have been produced without waiver under Rule 502(d).

Dated: June 24, 2024.   Respectfully submitted,

s/ Alexander A. Baehr
Alexander A. Baehr, WSBA #25320
**SUMMIT LAW GROUP, PLLC**
315 Fifth Avenue S, Suite 1000
Seattle, WA 98104
Telephone: (206) 676-7000
Email: alexb@summitlaw.com

Ekwan E. Rhow (admitted *pro hac vice*)
Marc E. Masters (admitted *pro hac vice*)
Barr Benyamin (admitted *pro hac vice*)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
Email: mmasters@birdmarella.com
Email: bbenyamin@birdmarella.com

Jonathan Rotter (admitted *pro hac vice*)
Kara M. Wolke (admitted *pro hac vice*)
Pavithra Rajesh (admitted *pro hac vice*)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Email: jrotter@glancylaw.com
Email: kwolke@glancylaw.com
Email: prajesh@glancylaw.com

*Attorneys for Plaintiff Jane Doe*

|   |   |
|---|---|
| 1 | *s/ Patty A. Eakes* |
| 2 | Patty A. Eakes, WSBA #18888<br>**MORGAN, LEWIS & BOCKIUS LLP** |
| 3 | 1301 Second Avenue, Suite 3000<br>Seattle, WA 98101 |
| 4 | Phone: (206) 274-6400<br>Email: patty.eakes@morganlewis.com |

Patty A. Eakes, WSBA #18888
**MORGAN, LEWIS & BOCKIUS LLP**
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com

Kathryn Deal (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Email: kathryn.deal@morganlewis.com

Phillip J. Wiese (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Phone: (415) 442-1000
Email: phillip.wiese@morganlewis.com

Zachary R. Lazar (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Phone: (312) 324-1000
Email: zachary.lazar@morganlewis.com

*Attorneys for Defendant Microsoft Corporation*


*s/ Gregory L. Watts*
Gregory L. Watts, WSBA #43995
Tyre L. Tindall, WSBA #56357
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
701 Fifth Avenue, Suite 5100
Seattle, WA 98104-7036
Telephone: (206) 883-2500
Facsimile: (866) 974-7329
Email: gwatts@wsgr.com
Email: ttindall@wsgr.com

Victor Jih (admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Email: vjih@wsgr.com

*Attorneys for Defendants Qualtrics International Inc. and Qualtrics, LLC*

**[PROPOSED] ORDER**

**IT IS SO ORDERED.**

Dated this 27th day of June 2024.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE