THE HON. RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JANE DOE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation; QUALTRICS INTERNATIONAL INC., a Delaware Corporation; and QUALTRICS LLC, a Delaware Limited Liability Company,<br><br>Defendants. | Case No. 2:23-cv-00718-RSM<br><br>**MOTION FOR CLASS CERTIFICATION**<br><br>NOTE ON MOTION CALENDAR:<br><br><u>July 31, 2026</u> |



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

A. The Microsoft UET Tag Implemented on Kaiser's Website Automatically Transmitted Patient Data to Microsoft's Advertising Network ..... 3

B. Qualtrics' Site Intercept Code on Kaiser's Website Automatically Transmitted Patient Data to Qualtrics' Databases ..... 6

III. ARGUMENT ..... 8

A. Legal Standard ..... 8

B. Plaintiff Satisfies the Rule 23(a) Requirements ..... 9

1. Numerosity ..... 9

2. Commonality ..... 9

3. Typicality ..... 10

4. Adequacy ..... 11

C. Common Issues Predominate Under Rule 23(b)(3) ..... 11

1. All Class Members Have Standing ..... 12

2. California Law Applies Classwide ..... 13

3. Common Issues Predominate for the CIPA Claims ..... 14

4. Common Issues Predominate for the Right to Privacy and Invasion of Privacy/Intrusion Upon Seclusion Claims ..... 17

5. Common Issues Predominate for UCL Claims ..... 19

6. Common Issues Predominate for the Monetary Relief Sought ..... 19

D. A Class Action is a Superior Method of Adjudication ..... 21

E. Rule 23(b)(2) Certification for Injunctive Relief is Also Warranted ..... 22

IV. CONCLUSION ..... 23




SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

## I. INTRODUCTION

Plaintiff Jane Doe ("Plaintiff") respectfully moves this Court pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure to certify the Proposed Classes (defined herein), appoint Plaintiff as Class Representative, and appoint Plaintiff's Counsel as Class Counsel pursuant to Rule 23(g).

Plaintiff brought this case because she, like millions of other members of Kaiser Permanente ("Kaiser") who visited Kaiser's website, had her private information collected by Defendants Microsoft Corporation ("Microsoft") and Qualtrics International, Inc. and Qualtrics LLC (collectively, "Qualtrics"), without her knowledge or consent. Millions of Kaiser's members rely on Kaiser's website to schedule doctor appointments, review their test results, and manage their health care records. Unbeknownst to them, while they were using Kaiser's website for their routine health care needs, Defendants took their sensitive and private personal health information ("PHI") and personally identifiable information ("PII").

This systematic and common invasion of the privacy rights of Kaiser patients is well-situated for class treatment. Defendants' tracking technologies embedded on Kaiser's website treat each class member and their data exactly the same way. As a result, Plaintiff's claims are typical of other class members and common issues will predominate the litigation. And because of the low probability that each class member will come forward to litigate his or her separate claim, and because the class approach would deter and redress the alleged wrongdoing, class action is the superior method for adjudicating these claims. The requirements of Rule 23 are satisfied, and all class claims will rise and fall based on common evidence, including Defendants' common practices regarding data collection and treatment of health and private data.

Plaintiff moves to certify California-resident only Subclasses for the California Invasion of Privacy Act ("CIPA") and California Unfair Competition Law ("UCL") claims, and National



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Classes and California Subclasses for the invasion of privacy and intrusion upon seclusion claims. The Proposed Classes are defined as follows:

> **First Nationwide Class:** All natural persons residing in the United States who are current or former Kaiser Members and had their PHI taken by Defendants while using the Kaiser Website.
>
> **First California Subclass:** All natural persons residing in California who are current or former Kaiser Members and had their PHI taken by Defendants while using the Kaiser Website.
>
> **First Northern California Subclass:** All natural persons residing in California who are current or former Northern California Kaiser Members and had their PHI taken by Defendant Qualtrics in connection with their partnerships with The Permanente Medical Group, Inc. ("TPMG").
>
> **Second Nationwide Class:** All natural persons residing in the United States who are current or former Kaiser Members and had their Private Data, other than PHI, taken by Defendants while using the Kaiser Website.
>
> **Second California Subclass:** All natural persons residing in California who are current or former Kaiser Members and had their Private Data, other than PHI, taken by Defendants while using the Kaiser Website.
>
> **Second Northern California Subclass:** All natural persons residing in California who are current or former Northern California Kaiser Members and had their Private Data, other than PHI, taken by Defendant Qualtrics in connection with their partnerships with TPMG.

For the following reasons, Plaintiff's Motion for Class Certification should be granted.

## II. STATEMENT OF FACTS

Kaiser is one of the leading healthcare providers in the nation. Ex. 8.[1] [redacted]. *See e.g.*, Ex. 9 at KP-Qualtrics-00000006. [redacted]. *Id.* During the course of Plaintiff's

[1] All "Ex.__" references are to Exhibits to the accompanying Declaration of Molly J. Gibbons ("Gibbons Decl.").



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

membership with Kaiser, she interacted and communicated with Kaiser in a variety of ways, including by logging in to her secure patient portal on the Kaiser website. Ex. 32, Declaration of Plaintiff Jane Doe ("Plaintiff Decl.") ¶7.[2]

While Plaintiff was logged into the patient portal, Defendants intercepted her sensitive and private medical information without her knowledge or consent. Defendants did the same thing to millions of other Kaiser patients who use the secure patient portal. As Plaintiff's expert, Zubair Shafiq, Ph.D., explains in his reports in support of Plaintiff's Motion,[3] [redacted]. *See* Shafiq-Microsoft ¶31; Shafiq-Qualtrics ¶31.

### A. The Microsoft UET Tag Implemented on Kaiser's Website Automatically Transmitted Patient Data to Microsoft's Advertising Network

Defendant Microsoft's advertising platform leverages a tag-based data collection system, commonly referred to as Universal Event Tracking ("UET"). Ex. 16. [redacted]. Shafiq-Microsoft ¶¶43-46. [redacted]. Ex. 21. [redacted]

[2] [redacted] *See* Exs. 10, 19.

[3] Given the technical nature of this case, Plaintiff retained Dr. Shafiq, a computer privacy expert and professor of Computer Science at U.C. Davis who leads research focused on "online privacy, security, and safety." *See* Ex. 1, Expert Report Of Zubair Shafiq, Ph.D. Regarding Defendant Microsoft, dated March 4, 2026 ("Shafiq-Microsoft"), ¶¶5-11, and Dr. Shafiq's C.V. thereto as Exhibit A; Ex. 2, Expert Report Of Zubair Shafiq, Ph.D. Regarding Defendants Qualtrics, dated March 4, 2026 ("Shafiq-Qualtrics"), ¶¶5-11; Ex. 3, Expert Rebuttal Report Of Zubair Shafiq, Ph.D. Regarding Defendants Qualtrics, dated May 22, 2026 ("Shafiq-Qualtrics Rebuttal"). Dr. Shafiq has co-authored more than 100 peer-reviewed papers and serves on advisory boards addressing online privacy technologies. *Id*. Dr. Shafiq reviewed materials and testimony, analyzed configuration information, analyzed log files produced by Defendants, analyzed Kaiser's website and other information produced in discovery, and offered his independent opinions on each of the Defendants' data collection practices.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

[redacted]. Shafiq-Microsoft ¶¶17-18, 62-63.

As Microsoft's Rule 30(b)(6) witness, Joshua Storz, explained, [redacted]. Ex. 6 (Storz Tr. at52:9-53:05). [redacted]. Shafiq-Microsoft ¶73. For example, [redacted]. Shafiq-Microsoft ¶¶18, 101; *see also* Ex. 14. ([redacted]).

[redacted]. *See* Ex. 1, Shafiq-Microsoft ¶96. [redacted] (compare Exs. 11, 12 to Ex. 13; *see also* Ex. 6, Storz Tr. at 87:3-8)), [redacted] (Ex. 11; *see also* Ex. 6, Storz Tr. at 88:2-5), [redacted]. *See* Shafiq-Microsoft, ¶47. [redacted]. Shafiq-Microsoft ¶¶18, 101.

This is exactly what happened to Plaintiff here. [redacted]



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

[redacted]. *See* Shafiq-Microsoft ¶90; Ex. 15. [redacted]. *Id.* [redacted]. Shafiq-Microsoft ¶¶89-95.

All of this data was collected without Plaintiff's knowledge or consent. [redacted]. Shafiq-Microsoft ¶73. In fact, [redacted]. Ex. 6 (Storz Tr. At 177:10-178:16). [redacted] *Id.* Ex. 30. [redacted] on the Kaiser Website. Ex. 6, Storz Tr. at 153:15. [redacted]

Finally, [redacted]. *See* Ex. 6, Storz Tr. at 165:16-166:01 ("[redacted]



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

[redacted]. *See* Exs. 14, 28; Ex. 6, Storz Tr. at 131:05-11; *see* Shafiq-Microsoft ¶104(a). [redacted] (*see* Ex. 6, Storz Tr. at 210:2-10), [redacted].

### B. Qualtrics' Site Intercept Code on Kaiser's Website Automatically Transmitted Patient Data to Qualtrics' Databases

Defendant Qualtrics owns and operates [redacted] Ex. 26. [redacted] *Id.* at QUALTRICS_00023545. [redacted] [redacted] [redacted]. *Id.* at QUALTRICS_00023547; *see also* Ex. 20.

[redacted]. *See* Ex. 27 at QUALTRICS_00023715; Shafiq-Qualtrics ¶¶71-73, 97; *see also* Shafiq-Qualtrics Rebuttal ¶¶62-75. [redacted]. *See* Shafiq-Qualtrics ¶¶46, 75-83, 107(c), 107(e). [redacted]. Ex. 26.

Embedded Data fields store ***pre-existing*** user details to enrich the data sent to Qualtrics. Ex. 29. [redacted]

[4] Website intercepts are a piece of JavaScript code (similar to a web "beacon" or "tag") placed on a website to interrupt a visitor's browsing experience to trigger a specific, targeted action, such as a website feedback survey or feedback form.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

[redacted]. *Id.* [redacted] *See* Shafiq-Qualtrics ¶¶56-86; Ex. 20 ([redacted], ¶3); Ex. 22 ([redacted]); *see also* Exs. 23, 31.

[redacted]. Shafiq-Qualtrics ¶¶56-74; Shafiq-Qualtrics Rebuttal ¶¶25-51. [redacted]. Shafiq-Qualtrics ¶¶87-101, 106-107; Shafiq-Qualtrics Rebuttal ¶¶52-75.

[redacted]. Ex. 23; *see also* Ex. 25. [redacted]



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

[redacted]" Ex. 23 (emphasis added); *see also* Ex. 24. [redacted]." Ex. 25. (emphasis added). [redacted].

## III. ARGUMENT

### A. Legal Standard

"Rule 23 provides a procedural mechanism for a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022).[5] The Court must satisfy itself, "after a rigorous analysis, that the prerequisites of both Rule 23(a) and 23(b)(3) have been satisfied." *Id.* at 664. Plaintiff "must prove the facts necessary to" establish these requirements "by a preponderance of the evidence." *Id.* at 665. "[S]trictly admissible evidence is not required," Plaintiff "can meet [her] evidentiary burden in part through allegations when the allegations are detailed and supported by additional materials." *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024). However, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

Recent cases, including *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 584 (N.D. Cal. 2025), *Rodriguez v. Google LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024), and *Torres v. Prudential Financial, Inc.*, 2024 WL 4894289 (N.D. Cal. Nov. 26, 2024), confirm that claims alleging the interception of personally identifying and sensitive information are well suited for class treatment.

---

[5] Unless otherwise noted, all internal citations and quotations are omitted, and emphasis is added.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

### B. Plaintiff Satisfies the Rule 23(a) Requirements

#### 1. Numerosity

Generally, "courts find [Rule 23(a)(1)'s] numerosity requirement satisfied when a class includes at least 40 members." *In re Zillow Grp., Inc. Sec. Litig.*, 2020 WL 6318692, *3 (W.D. Wash. Oct. 28, 2020). And, "[w]here the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Id.* This requirement is met here, as Kaiser boasts on its public facing website that it provides "care and coverage to 12.9 members, including over 9.7 million Californians." Ex. 7. [redacted]. *See* Shafiq-Microsoft ¶¶98-99 ([redacted]); Shafiq-Qualtrics ¶¶84-86 ([redacted]).

#### 2. Commonality

Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is construed "permissively," and "[a]ll questions of fact and law need not be common." *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 981 (9th Cir. 2011). Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient" to satisfy commonality under Rule 23(a)(2). *Parra v. Bashas, Inc*., 536 F.3d 975, 978 (9th Cir. 2008). "Even a single common question of law or fact that resolves a central issue will be sufficient." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). Here, Plaintiff's and the Classes' claims easily satisfy Rule 23(a)(2)'s low bar for commonality. Common questions of law or fact common to the classes here include, but are not limited to: (a) whether Defendants collected Plaintiff and Class Members' Private Data, including PHI and PII, when they used the Kaiser Website; (b) whether Defendants' acts and practices violated CIPA §§631(a) and 632; (c) whether



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Defendants' acts and practices violated Class Members' privacy rights and/or intruded upon their seclusion; and (d) whether Defendants' acts and practices violated California's Unfair Competition Law ("UCL"), Business and Professions Code §17200.

Each of these questions can be resolved on a classwide basis through common evidence. The same common issues that establish predominance under Rule 23(b)(3) also establish commonality. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013); *see infra* §III.C. Common evidence will thus answer the common questions that "resolve an issue that is central to the validity of each one of the claims in one stroke," satisfying commonality. *Rodriguez*, 2024 WL 38302, *3 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

**3. Typicality**

Rule 23(a)(3) asks "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The requirement is "permissive," and Plaintiff's claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *DZ Reserve v. Meta Platforms, Inc*., 96 F.4th 1223, 1238 (9th Cir. 2024).

Here, the record here shows that Plaintiff logged into the Kaiser Website's authenticated patient portal, and that Defendants intercepted and collected her private information without her consent. *See supra* §II. Typicality is thus satisfied here, as the claims of Plaintiff and Class Members arise from the same conduct by Defendants and are based on the same legal theories. *See, e.g.*, *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, *14 (C.D. Cal. July 24, 2017) (typicality satisfied in CIPA case where named plaintiffs "allege[d] a course of conduct by [defendant] common to the class, and privacy invasions typical to those of the class generally"). Because Plaintiff and all Class Members were subject to the same "practices," and suffered the same injury as a result, Plaintiff's claims are typical. *See Frasco*, 349 F.R.D. at 574 (typicality satisfied where named plaintiffs were surveilled by Meta's technology).



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

**4. Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement involves a two-prong test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985. Neither Plaintiff nor her counsel have any interest antagonistic to absent Class Members. Plaintiff, like each absent Class Member, has a strong interest in proving Defendants' common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress. Plaintiff and her counsel have also demonstrated their commitment to pursuing these claims on behalf of absent Class Members by vigorously litigating this action. Plaintiff provided verified responses to interrogatories, produced documents, sat for her deposition, and regularly communicates with counsel about this action, underscoring her commitment to the prosecution of this litigation. Ex. 32, Plaintiff Decl., ¶¶8-9. The same is true for proposed class counsel, who have significant experience in complex and class action litigation, including privacy class actions, and have dedicated substantial time and resources to this litigation. *See* Declaration of Alexander A. Baehr, ¶¶2-6; Declaration of Jonathan Rotter, ¶¶2-6; Declaration of Ekwan Rhow, ¶¶2-8. Plaintiff and her counsel are adequate representatives.

**C. Common Issues Predominate Under Rule 23(b)(3)**

Predominance "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen,* 568 U.S. at 459. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Id.* at 469. Instead, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442, 453 (2016). The key question is whether



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

those "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1238 (9th Cir. 2024) ("predominance does not require that all questions be common").

Under circumstances similar to those present here, courts in the Ninth Circuit have found predominance met. *See Frasco*, 2025 WL 1433825, *2 (certifying class of users of a Flo Period and Ovulation Tracker app whose health data was disclosed to Google); *Torres*, 2024 WL 4894289, *10 (finding that common issues predominated in case arising from illegal use of tracking technology on insurance website); *Jancik v. WebMD LLC*, 2025 WL 560705, at *9 (N.D. Ga. Feb. 20, 2025) (certifying class of WebMD users whose online video viewing was collected through the Meta Pixel). Here, common issues predominate over any hypothetical individual ones, satisfying Rule 23(b)(3)'s predominance requirement.

**1. All Class Members Have Standing**

In the Ninth Circuit, "the standing inquiry is concluded" for purposes of class certification "once the named plaintiff demonstrates her individual standing to bring a claim." *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015). Here, Plaintiff's right to privacy was violated, an injury "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("[V]iolations of the right to privacy have long been actionable at common law" and CIPA "codif[ies] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing"). Plaintiff was concretely harmed by Defendants' conduct. *See Frasco*, 349 F.R.D. at 580 ("Put in terms of standing, the loss of control over one's personal information is the 'concrete' harm, whether from stealing access to a personal diary in 1916 or obtaining user information in a healthcare app in 2016."). "The intrusion itself makes the defendant subject to liability." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020). These injuries are substantiated by Dr. Shafiq's reports and Plaintiff's declaration. *See* Ex. 32,



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Plaintiff Decl., ¶8; Shafiq-Microsoft ¶¶88-95; Shafiq-Qualtrics ¶¶58-74. At this stage, no more is required. *Lytle*, 114 F.4th at 1025 ("Requiring that class action plaintiffs actually prove classwide injury at this stage would improperly conflate the class certification inquiry with the merits.").

**2. California Law Applies Classwide**

When considering predominance, courts evaluate which law applies to the Classes, however, "[c]oncerns over which state's laws apply to a proposed class 'do not necessarily preclude a 23(b)(3) action…'" *Senne v. Kansas City Royals Baseball Corp*., 934 F.3d 918, 928 (9th Cir. 2019), *disapproved on other grounds by Olean*, 31 F.4th at 668 n.11. Plaintiff's and Class Members' claims all arise under California law.

Plaintiff seeks to certify California-resident only subclasses for CIPA and UCL claims, which alleviates extraterritoriality concerns for those claims. *See DellaSala v. Samba TV, Inc*., 2025 WL 3034069, *1, 3-4 (N.D. Cal. Oct. 30, 2025) (CIPA claims "do not apply to conduct that occurs to non-residents outside California"); *Sullivan v. Oracle Corp*., 51 Cal.4th 1191, 1207 (2011) ("the presumption against extraterritoriality applies to the UCL in full force.").

For the Invasion of Privacy and Intrusion Upon Seclusion Claims, the parties and the Court already relied on California law for litigating and deciding the motions to dismiss, and that continues to be the correct law to apply. Dkt. 61. Class Members may assert claims under California law when "California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1040 (N.D. Cal. 2014). The Ninth Circuit in *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012) (*overruled on other grounds by Olean*, 31 F.4th 651), set forth "the framework for applying California law to a nationwide class action." *Kearney v. Hyundai Motor Am*., 2012 WL 13049699, *7 (C.D. Cal. Dec. 17, 2012). Once the class action proponent carries its initial burden of demonstrating that California has "significant contact or significant aggregation of contacts" to class claims, "the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims." *Id*. (quoting *Mazza*, 666 F.3d at 589).


SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

California has significant contacts, or significant aggregation of contacts, to the claims asserted by Plaintiff and Class Members, thereby creating state interests to ensure that the choice of California state law is not arbitrary or unfair. Kaiser, from whose website all the data at issue was taken, is headquartered in Oakland, California, with over 9.7 million of its 12.9 million members (~75%) residing in California. *See* Ex. 7. Further, Microsoft maintains several offices in California (in Irvine and Mountain View) and conducts substantial business in California, such that California has an interest in regulating Microsoft's conduct under its laws, and Qualtrics also maintains an office in Palo Alto, California and conducts substantial business in California, such that California has an interest in regulating Qualtrics' conduct under its laws. *See* Dkt. 75, ¶¶123-126. Accordingly, California law applies.

**3. Common Issues Predominate for the CIPA Claims**

For the California Subclasses, common issues predominate for claims under CIPA §§631(a) and 632. CIPA §631(a) has four requirements: that the Defendant (1) "willfully" (2) "reads, or attempts to read, or to learn the contents" of a "message, report, or communication" (3) while the communication is "in transit" to or from a place in California; and (4) "without the consent of all parties." Cal. Penal Code §631(a).

The question of Defendants' "willfulness and knowledge is a common question." *McMillion v. Rash Curtis & Assocs.*, 2017 WL 3895764, *5 (N.D. Cal. Sept. 6, 2017). [redacted] *See* Shafiq-Microsoft ¶¶42-101, 118-123; Shafiq-Qualtrics ¶¶42-86, 102-107. [redacted]. *See* Shafiq-Microsoft ¶¶62-73; Shafiq-Qualtrics ¶¶73-74. [redacted] *See* Shafiq-Microsoft ¶73; Shafiq-Qualtrics ¶74;



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Shafiq-Qualtrics Rebuttal ¶¶72-74. [redacted].

Whether the data and information collected ([redacted]) constitute "contents" under CIPA is a merits question common to the class. *See Torres,* 2024 WL 4894289, *4 (finding "common questions" include whether collected information was "'content' as covered by CIPA" and certifying §631(a) class for interception of website information); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, *13 (N.D. Cal. Aug. 22, 2023) (CIPA's "contents" requirement satisfied where "the Pixel transmits to Meta the URL of each page visited on a website"); *In re Meta Pixel Healthcare Litig*., 647 F.Supp.3d 778, 795-96, 798 (N.D. Cal. 2022) ("descriptive URLs" "are content because they concern the substance of a communication;" both "query string" and "path" information "are content because they concern the substance of a communication"); *Brown v. Google LLC*, 685 F.Supp.3d 909, 935-36 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website" can constitute content); *Doe I v. Google LLC*, 2025 WL 1616720, *3 (N.D. Cal. June 6, 2025) ("In addition, a button-click for 'bill pay' would seem to be the content of a communication because the user was trying to substantively communicate with the provider.").

[redacted]. *See* Shafiq-Microsoft ¶¶55-73; Shafiq-Qualtrics ¶¶49-74. Any other evidence necessary to prove CIPA's "while … in transit" element at the merits stage will be technical, and common. *See Torres*, 2024 WL 4894289, *4 (certifying CIPA class where whether information was accepted while "in transit" was a common issue); *In re Yahoo Mail*, 308 F.R.D. 577, 591 (N.D. Cal. 2015) (whether the technical process by which "Yahoo intercepts emails" satisfies CIPA is a "common contention" that is "capable of classwide resolution").

Specific to the §631 claim for the California Subclasses, common evidence will also show that the communications were "being sent from, or received at any place within" California. Cal.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Pen. Code § 631(a). Courts have certified similar CIPA claims finding that "[t]he issue of location does not defeat predominance." *Torres,* 2024 WL 4894289, *9. [redacted]. Shafiq-Microsoft ¶¶60-100; Shafiq-Qualtrics ¶¶58-86. Additionally, common evidence regarding the location of Kaiser's website servers, which are believed to be located in California and will be determined in further merits discovery, provide additional classwide evidence of the California transmission. Further, courts can cross-check class membership using IP addresses alongside claim-form affidavits. *Torres,* 2024 WL 4894289, *9 ("Where the data points indicate different locations, class members may be required to attest via affidavit to their location at the time" they used the website).

The issue of consent is common as well. As the Ninth Circuit has held, section 631(a) requires "prior consent of all parties to a communication." *Javier v. Assurance IQ, LLC,* 2022 WL 1744107, *2 (9th Cir. May 31, 2022). It must also be "knowingly" agreed to. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("reasonable person" standard applies and "consent must be actual," meaning "the disclosures must 'explicitly notify' users of the conduct at issue"). To the extent that Defendants oppose certification on the ground that class members consented to Defendants' data collection, such a defense is meritless. "In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue." *In re Google RTB Consumer Privacy*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022). This requires notices of the "specific practice." *Campbell v. Facebook, Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014). A ***"generalized notice is not sufficient to establish consent."*** *Meta Pixel Healthcare*, 647 F.Supp.3d at 793. Here, Defendants made no attempts to *explicitly* notify or secure explicit consent directly from Kaiser's website users. Thus, whether Defendants has consent for its interception and collection of Kaiser user data is subject to common evidence at trial. *See Frasco*, 349 F.R.D. at 576 ("the evidence of … privacy disclosures is common to the class. The common disclosures will permit a jury to conclude in one



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

fell swoop whether a reasonable person would have been on notice of, and so could impliedly consent to, 'the particular conduct, or to substantially the same conduct."). Further, "[c]onsent does not turn on individual class members' subjective understandings of privacy disclosures." *Frasco*, 349 F.R.D. at 582.

The Section 632 claim is also appropriate for classwide resolution. S*ee Frasco*, 349 F.R.D. at 586 (predominance demonstrated for CIPA 632 claim for SDK interception of health data). Section 632(a) applies to the eavesdropping or recording "of a confidential communication," meaning "one of the parties 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Meta Pixel Healthcare*, 647 F.Supp.3d at 798-99. Communications with class members' healthcare providers are "confidential under the CIPA." *Id*. ("patient status is protected health information under HIPAA"); *Nienaber v. Overlake Hospital Medical Center*, 733 F.Supp.3d 1072, 1081-82 (W.D. Wash. 2024) (patient logins to private patient portal "reveals patient status, which in and of itself is [PHI]"). Here, Class Members have an objectively reasonable expectation that the data that they share with Kaiser through the Kaiser Website are not being intercepted and collected by Defendants. S*ee Frasco*, 349 F.R.D. at 586; *see Meta Pixel Healthcare*, 647 F.Supp.3d at 799 (holding that plaintiffs "will likely be able to show that they had an objectively reasonable expectation that their communications with their medical providers were confidential").

Both CIPA claims are therefore amenable to classwide resolution for the California Subclasses.

#### 4. Common Issues Predominate for the Right to Privacy and Invasion of Privacy/Intrusion Upon Seclusion Claims

The claims for invasion of privacy on behalf of the Nationwide Classes and California Subclasses also raise predominate questions of law and fact. Because of the similarities of the tests for the California Constitution's right to privacy and invasion of privacy and intrusion upon seclusion claims, courts often consider these claims together and ask whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion [on privacy] was highly offensive."



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 601 (9th Cir. 2020); *Hernandez v. Hillsides, Inc.* 47 Cal. 4th 272, 287 (2009) ("The right to privacy in the California Constitution sets standards similar to the common law tort of intrusion"). These elements are evaluated under an objective, "reasonable person" standard, *Rodriguez*, 2024 WL 38302, *4, and do "not require individualized determinations of class members' subjective expectations," *Opperman v. Path*, 2016 WL 3844326, *11 (N.D. Cal. Jul. 15, 2016).

Patients have an expectation of privacy regarding all communications inside password-protected patient portals. *See, e.g.*, *Ojeda v. Kaiser Permanente Int'l., Inc*., 2022 WL 18228249, *6 (C.D. Cal. Nov. 29, 2022) ("people have a privacy interest in their 'medical history and information.'"); *Nienaber v. Overlake Hospital Medical Center*, 733 F.Supp.3d 1072, 1081-82 (W.D. Wash. 2024) (patient logins to private patient portal "reveals patient status, which in and of itself is [PHI]"); *St. Aubin v. Carbon Health Techs., Inc*., 2024 WL 4369675, *4 (N.D. Cal. Oct. 1, 2024) ("Plaintiffs have 'an objectively reasonable expectation that their communications with their medical providers [are] confidential based on the laws and regulations protecting the confidentiality of medical information.'"). Thus, whether Plaintiff has a reasonable expectation of privacy can be answered objectively and on a classwide basis. *Rodriguez*, 2024 WL 38302, *5 (holding whether plaintiffs had an "objective, reasonable expectation of privacy…is a question capable of resolution class-wide"); *Opperman*, 2016 WL 3844326, *11.

Whether a reasonable person would find Defendants' conduct highly offensive is also subject to common proof. *See Rodriguez*, 2024 WL 38302, *5 (rejecting argument that deciding whether the intrusion was highly offensive "requires consideration of all the circumstances of intrusion" and explaining that "the central inquiry [is] whether a reasonable person would find the intrusion by Google highly offensive"); *Facebook*, 956 F.3d at 606 (analyzing whether invasion is "highly offensive to a reasonable person," with a "focus[] on the degree to which the intrusion is unacceptable as a matter of public policy"). The unauthorized disclosure of sensitive health and patient information is uniformly recognized as a highly offensive violation of privacy. *Doe v.*



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (finding collection of health information highly offensive because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person").

### 5. Common Issues Predominate for UCL Claims

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200. The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Comms. v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (Cal. Sup. Ct. 1999); *Alvarez v. Chevron Corp*., 656 F.3d 925, 933 n.8 (9th Cir. 2011). Further, the California Supreme Court has repeatedly held that relief under the UCL is available without "individualized proof of deception, reliance, and injury…" *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992). The UCL focuses "on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast*, 569 U.S. 27. Thus, the classwide evidence necessary to establish the UCL violation is therefore the same evidence necessary to show violation of the CIPA claims and the common law privacy claims on which it is based, as discussed above.

### 6. Common Issues Predominate for the Monetary Relief Sought

Class certification is appropriate where damages are "'capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast*, 569 U.S. 27). "[D]amage calculations alone cannot defeat certification" and "the presence of individualized damages cannot, by itself, defeat class certification." *Id*. Nor is it necessary to calculate the amount of classwide damages. *See Lytle*, 114 F.4th at 1024-25 (sufficient to show "damages could be calculated on a classwide basis, even where such calculations have not yet been performed"). Plaintiff seeks different forms of monetary relief depending on the cause of action:



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

statutory damages for the CIPA claims; and restitutionary damages and disgorgement for the invasion of privacy and intrusion upon seclusion claims. Each form of Class Members' monetary relief can be established through common proof.

**Statutory Damages.** CIPA provides for statutory damages, which would be common for the class. Cal. Penal Code §637.2(a); *see Kellman v. Spokeo, Inc*., 2024 WL 2788418, *11 (N.D. Cal. May 29, 2024) ("Statutory damages are calculated as prescribed by the statutes. *What the statute provides is a common question of law, so common questions predominate for the damages analysis, too.*"); *Torres*, 2024 WL 4894289, at *6, 9-10 (certifying CIPA class based on, *inter alia*, availability of classwide statutory damages). CIPA allows Plaintiff to elect between seeking $5,000 per violation or three times the amount of actual damages, though it does not require Plaintiff to have suffered any actual damages at all. *See* Cal. Penal Code §637.2; *Frasco*, 2025 WL 2680068, *12-14 ("This plain text establishes that the California legislature intended an award of $5,000 to be the remedy for a violation of CIPA, irrespective of actual damage"). Plaintiff's expert, Steven B. Boyles, can calculate CIPA damages consistent with the statutory prescriptions. Ex. 4, Expert Report of Steven B. Boyles Regarding Microsoft, dated March 4, 2026 ("Boyles-Microsoft Report"), ¶¶42-45; Ex. 5, Expert Report of Steven B. Boyles Regarding Qualtrics, dated March 4, 2026 ("Boyles-Qualtrics Report"), ¶¶39-42.[6]

**Disgorgement.** The invasion of privacy and intrusion upon seclusion claims allow for recovery in the form of disgorgement of profits resulting from unjust enrichment. *Rodriguez*, 2024 WL 38302, *11 (permitting disgorgement remedy for intrusion upon seclusion and invasion of privacy claims); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599-600 (9th Cir. 2020) (recognizing "right to disgorgement of profits"). The amount of Defendants' unjust enrichment is a common issue and can be assessed on a class-wide basis using a class-wide model to analyze and

[6] Mr. Boyles is a Certified Public Accountant (CPA), Certified in Financial Forensics (CFF) and Accredited in Business Valuation (ABV), with over 25 years of experience conducting accounting, financial, economic damages and valuation analysis; and has testified numerous times as an expert witness in federal and state courts. *See* Mr. Boyles' C.V., attached as Exhibit A to his reports.



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

quantify Defendants' profits arising from its violations of class members' privacy. *See* Boyles-Qualtrics Report ¶¶43-61; Boyles-Microsoft Report ¶¶46-65. The predominance requirement is therefore met.

**D. A Class Action Is a Superior Method of Adjudication**

A class action here will achieve "economies of time, effort, and expense" and promote "uniformity of decision as to persons similarly situated." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Superiority exists where the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film, Inc. v. Buono*, 847 F.3d 1108,1123 (9th Cir. 2017). Here, Class Members' individual damages pale in comparison to the cost of litigation. And with millions of class members, "[r]esolution of the common questions…on a classwide basis will promote efficiency by (1) bypassing the need to relitigate identical questions and conduct nearly identical discovery in parallel litigations and (2) avoiding the strain on scarce judicial resources that suits by individual [Kaiser Website] users would impose." *Frasco*, 349 F.R.D. at 587.

Additionally, "Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification" and the Ninth Circuit has not adopted an "ascertainability" requirement. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1133-34 (9th Cir. 2017), *abrogated on other grounds as recognized in Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026). As is the case here, it is sufficient if the Classes are "defined by an objective criterion." *Id.* And Class Members can self-identify. *See id.* at 1132 (noting that consumers may present affidavits "in a claims administration process after a liability determination has already been made" to determine class membership and confirm liability as to that individual); *Torres*, 2024 WL 4894289, *8 ("the Court can require class members to present an affidavit that a submission was theirs"). [redacted] *See, e.g.*, Ex. 10. [redacted] *See, e.g.*, Ex. 19. These Kaiser records and Defendants' data



SUMMIT LAW GROUP, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

are "capable of showing" individuals who used the Kaiser Website during time that Defendants' tracking technologies intercepted users' private information. *Torres*, 2024 WL 4894289, *8-9; *see* Shafiq-Microsoft ¶¶88-117; Shafiq-Qualtrics ¶¶90-101.

### E. Rule 23(b)(2) Certification for Injunctive Relief Is Also Warranted

Plaintiff also seeks certification under Rule 23(b)(2) for injunctive relief against Defendants. Injunctive relief is available under both CIPA and the UCL. *See* CIPA §637.2(b); *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956 (9th Cir. 2018) ("the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction."). The Court may certify claims under both 23(b)(3) and 23(b)(2). *See Brown v. Google, LLC*, 2022 WL 17961497, *20 (N.D. Cal. Dec. 12, 2022) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class."); *In re Xyrem*, 2023 WL 3440399, *12 (N.D. Cal. May 12, 2023).

Rule 23(b)(2) certification "look[s] at whether class members seek uniform relief from a practice applicable to all of them." *Ward v. United Airlines, Inc*., 2021 WL 534364, *7 (N.D. Cal. Feb. 12, 2021). The focus "is not on the claims of individual class members, but rather whether [a defendant] has engaged in a 'common policy.'" *Yahoo Mail*, 308 F.R.D. at 599. "Unlike Rule 23(b)(3), a plaintiff does not need to show predominance of common issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *Id*. at 587.

Plaintiff seeks relief from Qualtrics' ongoing collection and use of data, specifically an injunction: (1) precluding Qualtrics from further intercepting and collecting Kaiser users' private information and data; and (2) requiring Qualtrics to delete already collected data. As to Microsoft, Plaintiff seeks an injunction requiring Microsoft to purge the Kaiser users' data or derivative data stored or used in any of its services. Relief should also include appointing an independent third party to verify that the injunctive relief has been implemented by Defendants. This requested relief is sufficiently detailed at this juncture. *See Brown*, 2022 WL 17961497, *20 (finding similar measures would be "important changes" when it certified a 23(b)(2) class). Indeed, Rule 23(b)(2) "ordinarily



SUMMIT LAW GROUP, PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation...." *Parsons v. Ryan*, 754 F.3d 657, 689 n.35 (9th Cir. 2014).

## IV. CONCLUSION

Plaintiff respectfully requests that the Court certify the Classes and appoint Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel.

DATED this 5th day of June, 2026.

I CERTIFY THAT THIS MEMORANDUM CONTAINS 7,824 WORDS IN COMPLIANCE WITH THE LOCAL CIVIL RULES.

**SUMMIT LAW GROUP, PLLC**

By s/ Alexander A. Baehr
Alexander A. Baehr, WSBA #25320
Molly J. Gibbons, WSBA #58357
SUMMIT LAW GROUP, PLLC
315 Fifth Avenue S, Suite 1000
Seattle, WA 98104 | (206) 676-7000
Email: abaehr@summitlaw.com
mgibbons@summitlaw.com

**GLANCY PRONGAY WOLKE & ROTTER LLP**

Jonathan M. Rotter (admitted *pro hac vice*)
Holly K. Nye (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
(310) 201-9150
Email: jrotter@glancylaw.com
hnye@glancylaw.com
- and -
Takeo A. Kellar (admitted *pro hac vice*)
12544 High Bluff Drive, Suite 200
San Diego, CA 92130
(310) 201-9150
Email: tkellar@glancylaw.com

**BIRD, MARELLA, RHOW, LINCENBERG. DROOKS. & NESSIM, LLP**

Ekwan E. Rhow (admitted *pro hac vice*)
Marc E. Masters (admitted *pro hac vice*)
Monique M. Candiff (admitted *pro hac vice*)
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
(310) 201-2100
Email: erhow@birdmarella.com
mmasters@birdmarella.com
mcandiff@birdmarella.com

*Attorneys for Plaintiff*